[No. 23835-1-III. Division Three. January 30, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. SHAPPA JAY BAKER, *Appellant*.

---

*Ronnie M. Rae* and *Stormy N. Howell*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

¶1 SWEENEY, C.J. — Whether factual findings are sufficient to support the essential elements of a crime is a question of law. Whether factual inferences from historical facts are supported by the record is also a question of law. Intent is an essential element of assault. Mr. Baker claims the State did not prove he intentionally assaulted two police officers when he deliberately drove his car into a police car and a police motorcycle. He says his ultimate goal was just to get away, and the court should have inferred this from

the evidence. We agree with the State that the evidence was sufficient to prove the elements of first and second degree assault, including intent. We therefore affirm the convictions.

## FACTS

¶2 After a bench trial, the court entered written findings of fact. Mr. Baker does not challenge the court's findings. Unchallenged findings of fact are verities on appeal. *State v. Luther*, 157 Wn.2d 63, 78, 134 P.3d 205, *cert. denied*, __U.S.__, 127 S. Ct. 440 (2006). And those findings are the source of our factual recitation here.

¶3 A uniformed Spokane police officer came looking for Shappa J. Baker to investigate a reported protection order violation. Mr. Baker took off at high speed in his sports utility vehicle (SUV). Officer Robert Collins and Officer Lynette Longshore pursued in marked police cars with activated lights and sirens.

¶4 They chased Mr. Baker through the streets of Spokane. He drove at high speeds and ran stop signs and red lights. Officer Collins tried nudging the SUV into a spin, which sometimes stops the engine. Mr. Baker's engine did not stall. Mr. Baker then reversed, accelerated, and slammed into Officer Collins's car. The police car's front driver's and passenger's windows shattered, the side was dented, and the front tire and rim were damaged. The impact pushed the car up over a deep curb and into a yard. Officer Collins was thrown sideways to the center of the front seat. His body and gun hit the radio hard enough to disable it.

¶5 Mr. Baker then accelerated toward Officer Longshore's car and forced her to take evasive action. Mr. Baker then "flipped off" the officer, laughed, and sped off.

¶6 A third officer joined in, and an extended chase ensued at speeds up to 80 MPH (miles per hour) in posted 30 MPH zones. Mr. Baker crossed into the oncoming lanes and again ran stop signs and red lights. Police placed spike

strips in Mr. Baker's path. He turned into a small empty lot to avoid the spikes.

¶7 Officer Kenneth Applewaite was parked at the far end of the lot on his police motorcycle. Mr. Baker accelerated across the lot directly toward the motorcycle. Officer Applewaite jumped off the bike and ran with seconds to spare. Mr. Baker veered away from the motorcycle at the last second, but he, nonetheless, struck the front end of the bike.

¶8 The judge found that Mr. Baker intentionally assaulted Officer Collins with a deadly weapon, a motor vehicle capable of causing death or substantial bodily harm under the circumstances. And the court found that he intended to inflict great bodily harm. The court concluded these findings satisfied the elements of first degree assault. The court also concluded that Mr. Baker intentionally assaulted Officer Applewaite with a deadly weapon, a vehicle, and concluded that this was second degree assault.

## DISCUSSION

██ ██ ¶9 Mr. Baker's assignments of error are a bit ambiguous. He assigns no error to any of the court's findings of fact. He argues instead that the court drew the wrong inferences (factual inferences) from those historical facts (facts set out as findings of fact). Specifically, he urges us to second-guess the trial court's factual inference that Mr. Baker intended to escape rather than assault the police officers. Of course, the logical inferences drawn from the facts of any case are a matter for the finder of fact, here the trial court, not us. *State v. Bencivenga*, 137 Wn.2d 703, 709, 974 P.2d 832 (1999) ("Nothing forbids a jury, or a judge, from logically inferring intent from proven facts, so long as it is satisfied the state has proved that intent beyond a reasonable doubt."). So a question before us is whether a reasonable trier of fact could have inferred from Mr. Baker's conduct that he intended to strike these officers or the vehicles they were in or near. To ask the question here is to answer it: of course the judge could.

¶10 Mr. Baker saw police in uniforms and clearly marked police vehicles (a squad car and a police motorcycle). He appeared to deliberately try to strike the police vehicles. He "flipped off" an officer and laughed. These historical facts easily support a factual inference that Mr. Baker intended to strike these officers. These essential, elemental facts include the "critical question" of state of mind. When findings of fact are mislabeled as conclusions of law, we review them for substantial evidence, not de novo as conclusions of law. *State v. Evans*, 80 Wn. App. 806, 820 n.35, 911 P.2d 1344 (1996).

¶11 Mr. Baker also argues that the court's unchallenged findings do not support the court's legal conclusion—assault.

¶12 "A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm: (a) Assaults another with . . . any deadly weapon or by any force or means likely to produce great bodily harm or death." RCW 9A.36.011(1). "A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: . . . (c) Assaults another with a deadly weapon." RCW 9A.36.021(1).

¶13 Washington recognizes three definitions of assault derived from the common law: (1) an attempt to inflict bodily injury upon another with unlawful force, (2) an unlawful touching with criminal intent, and (3) putting a person in apprehension of harm with or without the intent or present ability to inflict harm. *Clark v. Baines*, 150 Wn.2d 905, 908 n.3, 84 P.3d 245 (2004).

¶14 To prove assault based solely on an attempt to injure, the State must show that the defendant specifically intended to cause bodily injury. *State v. Eastmond*, 129 Wn.2d 497, 500, 919 P.2d 577 (1996). But the State need not prove specific intent—either to inflict substantial bodily harm or to cause apprehension—if unlawful physical contact occurs. That is an actual battery. *State v. Daniels*, 87 Wn. App. 149, 155, 940 P.2d 690 (1997). Assault by actual battery consists of an intentional touching or striking,

whether or not any physical injury results. Therefore, the State need show only the intention to touch or strike, not the intent to injure. *State v. Hall*, 104 Wn. App. 56, 62, 14 P.3d 884 (2000).

¶15 And, contrary to Mr. Baker's assertion, the statutory definition of "deadly weapon" includes a vehicle that "under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6). The facts here and the inferences drawn by the court from those facts easily support the court's conclusions that Mr. Baker intentionally assaulted Officer Applewaite and Officer Collins with a deadly weapon.

¶16 Moreover, the State needed to show only that the physical act constituting the assault was intentional, not the infliction of injury or apprehension. *Hall*, 104 Wn. App. at 62. In sum, whether we view Mr. Baker's challenge as a challenge to the factual inferences drawn from the historical facts of this case or as a challenge to the legal sufficiency of those facts and the court's inferences from those facts to support the essential legal elements of assault, we conclude that the court's decision is easily supported.

COMMUNITY PLACEMENT

¶17 Mr. Baker next argues that his status (on community placement) increased his potential penalty. And he argues that he was therefore entitled to have a jury decide whether he was on community placement or not. He cites to *Blakely v. Washington*.[1] Our Supreme Court has answered this question. *State v. Jones*, 159 Wn.2d 231, 149 P.3d 636 (2006). There, the court held that:

> In our judgment, the prior conviction exception encompasses a determination of the defendant's probation status because probation is a direct derivative of the defendant's prior criminal conviction or convictions, and the determination involves nothing more than a review of the defendant's status as a repeat

---

[1] 542 U.S. 296, 302, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

offender. In this regard, the community placement conclusion does not implicate the core concern of *Apprendi*[2] and *Blakely*—that is, the determination does not involve in any way a finding relating to the present offense conduct for which the State is seeking to impose criminal punishment and/or elements of the charged crime or crimes.

*Jones*, 159 Wn.2d at 241.

¶18 The court did not err in adding a point to Mr. Baker's offender score based on its own finding that he offended while on community placement.

¶19 We affirm the convictions and the sentence.

SCHULTHEIS and KATO, JJ., concur.

---

[2] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).